CARMEN SÁNCHEZ RODRÍGUEZ ET AL., demandantes y recurrentes, *v.* ANTONIO LÓPEZ JIMÉNEZ ET AL., demandados y recurridos.

*Números:* R-84-279, R-84-280

*Resueltos:* 9 de mayo de 1985

*Carlos R. Ríos Gautier,* abogado de los codemandados y recurrentes esposos López Jiménez, *Orlando Vizcarrondo,* de *Arrieta & Vizcarrondo,* abogado de los recurrentes y recu-

rridos esposos Valdejully López; *Iván Díaz de Aldrey,* de *Díaz de Aldrey, Subirá & Santana, Ramos & Latoni,* abogado de los recurrentes y recurridos esposos López Landrón; *Rafael Hernández Matos, Jorge Meléndez Vela* y *José Davison Lampón,* abogados de los recurrentes y recurridos Carmen Sánchez Rodríguez *et al.*

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

(EN RECONSIDERACIÓN.)

Evaluamos la segunda reconsideración presentada por los demandantes recurrentes Carmen Sánchez Rodríguez *et al.* en la que reiteran el planteamiento de que nuestra decisión y sentencia del 11 de marzo es nula por carecer este foro de jurisdicción, al no estar constitucionalmente constituido. En síntesis, argumentan que la "actual composición de este Tribunal de un juez presidente y de sólo tres jueces asociados es menor a la que exige la sección 3, del artículo V de la [C]onstitución del ELA. Entendemos que tal como está redactada dicha sección fue la intención de la asamblea constituyente que el Tribunal Supremo estuviera siempre constituido por un mínimo de cinco jueces, o sea, un juez presidente y cuatro jueces asociados. Pero en el supuesto que esa no hubiera sido la intención de la asamblea constituyente al reservar la facultad de variar por ley el número de jueces al propio Tribunal y a la Legislatura, y aceptáramos que su composición podría ser constitucional con menos de cinco jueces, como es al presente, a[u]n así la actual composición viola el mandato constitucional ya que no se ha seguido el procedimiento establecido en la sección 3, del artículo V de la Constitución del ELA".

I

La interpretación que se nos propone es de estricta literalidad del Art. V, Secs. 1 y 3 que rezan:

El Poder Judicial de Puerto Rico se ejercerá por un Tri-

bunal Supremo, y por aquellos otros tribunales que se establezcan por ley.

.    .    .    .    .    .    .

El Tribunal Supremo será el tribunal de última instancia en Puerto Rico *y se compondrá de un juez presidente y cuatro jueces asociados.* El número de sus jueces sólo podrá ser variado por ley, a solicitud del propio Tribunal Supremo. (Énfasis suplido.) Art. V, Secs. 1 y 3, Const. E.L.A., L.P.R.A., Tít. 1.

Los recurrentes no nos ofrecen, en el legajo de la Convención Constituyente, una explicación, conclusión o apoyo para su teoría. Hemos reflexionado e investigado el propósito del diseño constitucional prevaleciente y es contrario a esa proposición.

Primero. Sostener esa proposición conllevaría una paralización del Poder Judicial constitucional, la administración de justicia, y dejaría a merced de los otros dos poderes su funcionamiento. Ello implicaría una "inmovilización" de este Tribunal cuando por alguna razón, no está constituido por cinco (5) de sus miembros.

Segundo. La razón histórica de la composición de este Tribunal respondió a una preocupación de la Asamblea Constituyente por garantizar una multiplicidad de criterios, enfoques y visiones, que hicieran de la instancia apelativa una alternativa amplia y justa en sus decisiones. Se estimó que no era saludable tener un número reducido de jueces para adoptar decisiones. La discusión y planteamientos de distintos delegados indica un sentir respecto a lo *aconsejable* que resultaría que las decisiones emitidas por salas compuestas por sólo tres (3) jueces, fuesen emitidas por unanimidad. La ponencia de algunos jueces que en aquella época integraban este Tribunal ante la Comisión Constituyente, apoya la tesis de los delegados sobre este particular. 1 Diario de Sesiones de la Convención Constituyente 520 *et seq.* (1951).

En este sentido, la única conclusión que arroja la actual composición del Tribunal es que exige de todos sus miembros

un invariable celo, cuidado y ponderación, efectiva comunicación y consenso deliberado de criterios, para satisfacer la preocupación que animó a los delegados, sobre la *amplitud* de la revisión que se esperaba de esta última etapa apelativa.

■ Es menester despejar el error en que incurren los recurrentes, esto es, que la composición de cinco (5) jueces es requisito jurisdiccional para la adjudicación válida por este Tribunal. No lo es. Sobre este extremo resultan orientadores los debates en la Asamblea Constituyente relativos a un decreto de inconstitucionalidad de leyes por mayoría *absoluta*. Allí se planteó la situación de vacantes, que colocaban el número de jueces bajo el mínimo de cinco (5). El inventario es claro. La respuesta fue que la *mayoría absoluta* requerida prevalecía en su número ideal de tres (3), y que ante una composición disminuida el tribunal sólo podía resolver casos por otros motivos. Repetimos, la Asamblea Constituyente distinguió la composición del Tribunal en términos de cinco (5) miembros, al solo efecto de promover un ideal amplio de revisión. En el caso de reclamación de inconstitucionalidad de leyes, tal exigencia es de cumplimiento *estricto;* requiere mayoría *absoluta* de sus miembros indistintamente de que hubiesen vacantes, por lo que éstas se sumarían en el número ideal de sus miembros. No ocurre así con las restantes decisiones, las cuales responden al criterio de mayoría simple de los presentes. Véanse: 1 Diario de Sesiones, *supra*, págs. 455, 519–569, 594, 595, 616 (1951); 3 Diario de Sesiones, *supra*, págs. 1697–1699 (1952); 4 Diario de Sesiones, *supra*, págs. 2349, 2456 y 2612 (1952).

La exposición de este diseño constitucional ya fue aclarado incidentalmente por este Tribunal en dos ocasiones. La primera, en *Pueblo v. Pérez Méndez*, 83 D.P.R. 539 (1961), en que resolvimos que la única limitación constitucional al proceso decisorio era que ninguna ley sería declarada inconstitucional a no ser por una mayoría del número total de los jueces de que esté compuesto. Subsiguientemente, en *P.I.P.* v.

*E.L.A.*, 109 D.P.R. 685 (1980), la mayoría se reafirmó en que el requisito, tanto de composición mínima, como de mayoría absoluta, estaba dirigido a actuaciones que envolvían decretos de inconstitucionalidad. *P.I.P.* v. *E.L.A.*, supra, págs. 689–698. Nos remitimos a lo allí expuesto y criterios de las distintas opiniones separadas entonces emitidas.

A su vez, no podemos dejar de enfatizar el interés público que reviste el planteamiento. Repetimos, conllevaría colocar a la Rama Judicial a merced de los poderes ejecutivo y legislativo. Esto es, cuando por transcurso natural del tiempo surjan vacantes que disminuyan nuestra composición al mínimo de cinco (5) jueces, este Tribunal "dejaría de existir" en espera de las ramas de gobierno antes mencionadas, las cuales responden a propósitos eminentemente políticos. Esa teoría es contraria a un gobierno de leyes cimentado en la "doctrina de frenos y contrapesos". Frustraría la independencia de la Rama Judicial, concebida por los filósofos ingleses originalmente y luego por los angloamericanos, como el portaestandarte de los ciudadanos frente a los otros poderes de gobierno. La continuidad de los cuerpos y por ende de sus funciones, es la norma y no la excepción.

El planteamiento de los recurrentes choca contra el historial y espíritu de la Constitución. Afortunadamente, la Convención Constituyente tuvo la visión y sensibilidad de prever el problema. Nuestro esquema constitucional, puesto a prueba una vez más, responde vigorosamente a otro reto de paralización, desestabilización y mala comprensión.

## II

Por último, debemos tener presente la Sec. 4 del Art. V, según la enmienda constitucional aprobada en 1960. Dispone:

El Tribunal Supremo *funcionará* bajo reglas de su propia adopción, *en pleno o dividido en salas compuestas de no menos de tres jueces*. Ninguna ley se declarará inconstitucional a no ser por una mayoría del número total de los jueces de que esté compuesto el tribunal de acuerdo con esta

Constitución o con la ley. (Énfasis suplido.) Art. V, Sec. 4, Const. E.L.A., L.P.R.A., Tít. 1.

▉ Mediante el mismo se autoriza a este Tribunal a funcionar flexiblemente, en pleno o dividido en salas compuestas por no menos de tres (3) jueces. Ello despeja toda duda al respecto. Esa enmienda armoniza y satisface fehacientemente la preocupación esbozada en la Convención Constituyente. Se concibe, desde todo punto pragmático, y supera la limitación inherente que representaría para la administración de la justicia la imposición al Tribunal de restricciones absolutas.

*A la segunda reconsideración, no ha lugar. Cúmplase el mandato. El Juez Asociado Señor Rebollo López no intervino.*